UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH WILKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 13 C 375 |
| | ) | |
| OFFICER MERKLE, OFFICER GROSS, | ) | |
| and OFFICER DERENGOWSKI, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on the motion for summary judgment of Defendants, Officer Merkle, Officer Gross, and Officer Derengowski (collectively "Defendants") pursuant to Fed. R. Civ. P. 56 ("Rule 56"). For the following reasons, the Court grants summary judgment in favor of Defendants.

### BACKGROUND

**I. Facts**

The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. The Court reviews each Local Rule 56.1 statement and it disregards any argument, conclusion, or assertion unsupported by the evidence in the record. The parties do not dispute the facts below unless otherwise noted.

Plaintiff Joseph Wilkins ("Wilkins") brought this action against Defendants pursuant to 42 U.S.C. § 1983 *et seq.* ("Section 1983") alleging unconstitutional conditions of confinement at Cook County Jail, Division 10. From November 13, 2012, to November 26, 2012, Wilkins was housed in Division 10, Tier 4-A, Cell 4106. Pltf. Comp., Dkt. 11. Wilkins alleged that during this time the toilet did not work, the sink had no running water, the mirror above the sink was torn off, the cell was dusty, and the cell, but not the entire tier, was extremely cold. Dkt. 69-3. Wilkins claimed that due to the cold temperatures in his cell, he experienced symptoms similar to those of a common cold and that he also suffered from anxiety. *Id.* Despite these cold temperatures, Wilkins never purchased any additional clothing from the commissary, but he did purchase other items while incarcerated. *Id.*

Tier 4-A had a community bathroom with three toilets and three to four showers. Dkt. 69-3. In addition to the community bathroom, there was also a water fountain located on the tier. *Id.* Wilkins was usually allowed outside of his cell for five to six hours per day, where he had access to the community bathroom and the water fountain. *Id.*

Defendants were all correctional officers. In November 2012, Officer Merkle and Officer Derengowski were assigned to Tier 4-A in Division 10. Dkts. 69-4, 69-5. Officer Gross was specifically assigned to the Work Order Unit of the Cook County Department of Corrections. Dkt. 69-5. In this position, Officer Gross was responsible for the daily pick-up of Tier Inspection sheets from Tier 4-A in Division 10. *Id.* After

obtaining the Tier Inspection sheets, which detailed any maintenance issues, Officer Gross entered any necessary work order requests with Facilities Management. *Id*.

In his deposition, Wilkins testified that he complained to Defendants about the conditions of his cell. Dkt. 69-3. He stated that Officer Derengowski ignored his needs, but that Officer Merkle did not. *Id*. Wilkins also admitted that Officer Gross visited his cell and that he informed Officer Gross of all of the issues with his cell. *Id*. According to Wilkins, after this visit, Officer Gross submitted a work order request to address the plumbing issues in cell 4106. *Id*.

Defendants stated in their affidavits that they had no recollection of any conversations with Wilkins and that they did not recall receiving any written communication from him. Dkts. 69-4, 69-5, 69-6. Officer Gross admitted in his affidavit that he received a Tier Inspection sheet from Tier 4-A on November 16, 2012, which indicated that there was no running water in the sink located in Cell 4106. Dkt. 69-6. After receiving this Tier Inspection sheet, Officer Gross entered a work order request with Facilities Management. *Id*. This was the only work order submitted for Cell 4106 in November of 2012. Dkt. 69-7.

## PROCEDURAL HISTORY

On January 17, 2013, Wilkins filed a one-count complaint (the "Complaint") pursuant to Section 1983 against the current Defendants, Director Hickerson and Cermak Health Services. On May 22, 2013, the Court dismissed Director Hickerson and Cermak Health Services from the case. On May 14, 2015, Defendants filed the

instant motion for summary judgment pursuant to Rule 56.  It is important to note that on October 30, 2014, discovery closed and Wilkins failed to serve Defendants with any written discovery.  The parties administered Wilkins' deposition, which both parties rely on as evidence.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact arises where a reasonable jury could find, based on the evidence of record, in favor of the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A motion for summary judgment requires the Court to construe all facts and to draw all reasonable inferences in favor of the non-movant.  *Id*. at 255.  The movant bears the initial burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party meets its burden, the burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial. *Becker v. Tenenbaum-Hill Associates, Inc.*, 914 F.2d 107, 110 (7th Cir. 1990) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586-87 (1986).  The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; the non-movant must go beyond the pleadings and support his

contentions with documentary evidence of specific facts that demonstrate that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

## DISCUSSION

### I. Plaintiff's Unauthenticated Grievance

As stated in the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), Wilkins was required to exhaust his administrative remedies. In their Answer to the Complaint, Defendants included Wilkins' failure to exhaust his administrative remedies as an affirmative defense. However, Defendants did not pursue this affirmative defense in a separate motion to dismiss under Fed. R. Civ. P. 12(b)(6) nor did they include such an argument in the instant motion for summary judgment. As such, the Court did not decide this issue on a Fed. R. Civ. P. 12(b)(6) motion to dismiss because no such motion was ever filed.

Attached to the Complaint, Wilkins provided one unsigned, unauthenticated grievance ("Unauthenticated Grievance"), dated November 19, 2012, as proof of exhaustion. *See* Dkt. 69-2. The Unauthenticated Grievance stated that Wilkins was exposed to a "sink [ ] full of dry wall," "water [that] did not work," "[a] toilet [that] does not properly flush," and "heat [that] is not working." *Id*. Defendants fail to address Wilkins' Unauthenticated Grievance in the pending motion. Instead, they focus on demonstrating that Wilkins was not "incarcerated under conditions posing a substantial risk of serious harm" and that Defendants did not act with deliberate indifference to that alleged risk. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

The Court acknowledges that Wilkins must properly exhaust his administrative remedies before his constitutional claim can be fully assessed. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (the Seventh Circuit has held that "no documentation to back up [a] claim, such as a copy of the grievance" is "an adequate basis for a grant of summary judgment."). The Court has not held an evidentiary hearing to resolve this administrative issue, and it does not find one necessary, because Defendants brought this motion for summary judgment based on Wilkins' failure to properly allege that Defendants acted with deliberate indifference to his safety, rather than Wilkins' failure to properly exhaust his administrative remedies. Consequently, for the sake of the instant motion, the Court will assume that Wilkins has properly exhausted his available administrative remedies and we will assess the merits of the case.

**II. Cause of Action Under Section 1983**

Under Section 1983, a prison officer cannot incur liability unless the officer "caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005); *Hildebrandt v. Illinois Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (*citing Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). A defendant will be held liable under Section 1983 when a plaintiff can establish a causal connection between the alleged misconduct and the official being sued. *Hildebrandt*, 347 F.3d at 1039.

Wilkins alleged that Defendants directly engaged in conduct that resulted in a deprivation of his constitutional rights. However, Wilkins admitted that he could not recall specific conversations or complaints that he made to each individual officer. Dkt. 69-3. In referencing a conversation with Officer Merkle, Wilkins explained in his deposition, "Officer Merkle maybe – he told me that he would tell somebody or they would put a work order in or—I don't know." *See* Dkt. 69-3, at 60:7-9. Wilkins then stated, ". . . I think he said that they had been putting in the work orders . . .". *Id.* at 61:10-11. When discussing Officer Derengowski, Wilkins said, "I remember talking to them and explaining to them, trying to plead with them . . . to try to get me out of there or call a sergeant, do something, give me up—you know, help me out." *Id.* at 66:24, 67:1-4. When asked about his conversations with Officer Gross, Wilkins stated, "I don't recall. I don't recall really . . . I remember seeing his name when he came in with the work orders and stuff, writing down the problems with the cell." *Id.* at 44:24, 45:1-4. Later, Wilkins added that he told Officer Gross that the sink and the water did not work and the toilet would not flush. *Id.* at 45:9-13.

In complying with the standard for summary judgment, this Court has drawn all justifiable inferences in favor of Wilkins as the non-moving party. *Anderson*, 447 U.S. at 255. As such, the conversations Wilkins claimed he had with Defendants are sufficient to establish that there was a causal connection between Defendants and the alleged constitutional deprivation. However, as explained below, Wilkins fails to

establish an Eighth Amendment violation because he did not show that Defendants acted with deliberate indifference to the risks created by his jail conditions.

**III. Eighth Amendment Violations**

In his response to the instant motion, Wilkins insists that there is a genuine issue of material fact as to whether Defendants violated his Eighth Amendment rights by failing to rectify the unconstitutional conditions in his jail cell. Defendants argue that Wilkins failed to provide sufficient evidence to establish such a dispute.

Pursuant to the Eighth Amendment, a prisoner is entitled to confinement that is at least "humane" with "adequate food, clothing, shelter, and medical care." *Sain v. Wood*, 512 F.3d 886, 893-94 (7th Cir. 2008); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, in the instant case, Wilkins was a pre-trial detainee. As such, "it is the [D]ue [P]rocess [C]lause of the Fourteenth Amendment, rather than the Eighth Amendment's proscription against cruel and unusual punishment which is the source of this right." *See Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979).

Nevertheless, this Court recognizes that an Eighth Amendment analysis is appropriate ". . . in addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's [D]ue [P]rocess [C]lause are at least as broad as those that the Eighth Amendment affords to convicted prisoners . . ." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664-65 (7th Cir. 2012) (*citing City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Therefore, this Court will engage in an Eighth Amendment analysis in addressing Wilkins' allegations.

In evaluating a conditions-of-confinement claim, the Court conducts both an objective and a subjective inquiry. *See Estate of Miller, ex. rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012). To establish an Eighth Amendment violation, an inmate must establish both: (i) objectively, that the conditions at issue were "sufficiently serious," such that they denied him of the "minimal civilized measure of life's necessities[;]" and (ii) subjectively, that the officers acted with deliberate indifference to those conditions. *Farmer*, 511 U.S. at 834, 837. A prison official acts with deliberate indifference when he or she "knew that the inmate faced a substantial risk of serious harm," but he or she refused to take reasonable steps to resolve the risk. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). To establish that a prison official was deliberately indifferent, a defendant must show that the prison official actually knew of and disregarded the risk. *Lewis v. Richards*, 107 F.3d 549, 552-53 (7th Cir. 1997) (*citing Farmer*, 511 U.S. at 837-38). A prison official will not incur culpability simply because he or she would have known or should have known that the prisoner was at risk. *Id.*

**A. Prison Cell Conditions**

Turning to the objective prong, the Seventh Circuit has examined various factors in order to determine whether cell conditions are "sufficiently serious" such that they deny an inmate of the "minimal civilized measure of life's necessities." *Farmer*, at 511 U.S. at 834. In reviewing cold cell claims, a court will consider the severity and the duration of the cold, "whether the prisoner has alternative means to

protect himself from the cold, the adequacy of such alternatives," and whether the prisoner must endure any other uncomfortable conditions, in addition to the cold temperatures. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997). Each of these factors is taken into consideration and no one factor or combination of factors is considered determinative. *Id.* at 644. This is a fact specific inquiry. *Del Raine v. Williford*, 32 F.3d 1024, 1033 (7th Cir. 1994) (*citing Chandler v. Baird*, 926 F.2d 1057, 1063-66 (11th Cir. 1991).

The Seventh Circuit has found that summary judgment is not appropriate where prisoners are subjected to brutally cold temperatures, even for a short period of time, *see e.g. Del Raine*, 32 F.3d at 1033 (summary judgment was not appropriate where prison officials failed to properly repair windows in prisoner's cell block, subjecting him to below freezing temperatures during fifteen to thirty minute strip searches) nor was it appropriate where prisoners were subjected to cold temperatures over an extended and a continuous period of time. *See e.g. Dixon*, 114 F.3d at 643 (where plaintiff was subjected to less severe temperatures than the plaintiff in *Del Raine*, but he was subjected to such cold during the winter months, for a period of four years).

As for determining whether the lack of running water creates a constitutional violation, our sister courts have found that broken in-cell plumbing, while inconvenient, does not generally rise to the level of a constitutional violation. *Mims v. Hardy*, No. 11 C 6794, 2013 WL 2451149, at *9 (N.D. Ill. June 5, 2013); *see e.g., Muhammad v. Wilson*, No. 05 C 743, 2006 WL 2413710, at *2-3 (N.D. Ill. Aug. 16,

2006) (broken plumbing for seven days where plaintiff was given three meals a day, including beverages with each meal, "was an inconvenience" and "did not amount to a constitutional violation"); *Davis v. Biller*, No. 00 C 50261, 2003 WL 22764872, at *2 (N.D. Ill. Nov. 19, 2003) (inmate has a basic right to drinking water but a dysfunctional sink alone is not necessarily cruel and unusual punishment).

Based on the record, Wilkins was not deprived of drinking water or bathroom facilities as he had access to a "day room," which had a water fountain, showers, and toilets. However, for the sake of argument, the Court will assume that the objective prong of the two-part test has been satisfied due to the potential health risks resulting from the combination of the lack of working plumbing and proper heat in Wilkins' cell. *See Vinning-El v. Long*, 482 F.3d 923, 923-25 (7th Cir. 2007) (reversing summary judgment for defendant where prisoner was deprived of basic sanitation items and incarcerated for six days in a cell in which blood and feces were smeared on the walls, water covered the floor, and the sink and the toilet did not work). However, to defeat summary judgment, Wilkins still must establish a genuine issue of material fact as to the subjective element of the applicable test, namely that Defendants acted with deliberate indifference to the risks created by his prison cell conditions.

**B. Deliberate Indifference**

The Seventh Circuit has recognized that "deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates . . . or 'turn[s] a blind eye to it.'" *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996) (*quoting*

*Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Under some circumstances, knowledge of an inmate's unconstitutional conditions may "require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition." *Vance*, 97 F.3d at 993. A prison official's failure to act in such circumstances suggests that the official actually wants the prisoner to suffer harm. *See Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). "This type of deliberate indifference 'implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Mims*, 2013 WL 2451149, at *12 (*quoting Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir. 1985)). "[M]ere negligence or even gross negligence does not constitute deliberate indifference," *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996), and it is not enough to show that a prison official merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995).

In *Mims*, the plaintiff, Bernard Mims ("Mims"), alleged that the defendants violated his Eighth Amendment rights when he was required to "live in a cell [at Stateville Correctional Center] with no running water and a broken toilet for 45 days." 2013 WL 2451149, at *1. Mims wrote letters and emergency grievances regarding these plumbing issues. Each emergency grievance was dated and the records indicated that each grievance was received by the Administrative Review Board ("ARB"). *Id*. at *3-4. Additionally, numerous work orders were submitted by the

correctional sergeant who supervised Mims. *Id*. at *3. Sixteen days after the first emergency grievance was submitted, a work order was created and repairs were made. *Id*. However, less than two weeks later, Mims filed a second emergency grievance, as the same problems had returned. *Id*. After the initial repair, all subsequent emergency grievances were deemed "non-emergencies" by the ARB and by the Office of Inmate Issues for the Illinois Department of Corrections. *Id*. at *4.

The district court in *Mims* found that there was a factual dispute as to whether the officer defendants were deliberately indifferent because Mims filed multiple emergency grievances about the conditions of his cell, which ultimately put the defendants on notice. *Id.* at *12. The court held that "a reasonable jury could conclude that these defendants were aware of [the plaintiff's] conditions of confinement and that they acted with deliberate indifference by allowing those conditions to persist for as long as they did." *Id*.

Unlike in *Mims*, Wilkins testified that he submitted the Unauthenticated Grievance (with no additional evidence establishing Defendants' receipt of such) and that on November 17, 2012, Officer Gross visited his cell and verified that the water did not work and that the toilet did not flush. Officer Gross subsequently submitted a work order. As for Officer Merkle, Wilkins explicitly acknowledged in his deposition testimony that Officer Merkle did not ignore him. *See* Dkt. 69-3, at 66:19-20; *See Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002) (*citing Farmer*, 511 U.S. at 844-45) (where the Court found that prison officials who had actual knowledge of a health

13

risk are "free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted [because] . . . prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishment[ ]Clause."). Furthermore, unlike the plumbing issues in *Mims*, which persisted after the initial repair, there is no indication from Wilkins that the plumbing issues in his cell continued after Officer Gross submitted the work order. Thus, both Wilkins' deposition testimony, in conjunction with the Unauthenticated Grievance, demonstrate to the Court that there is no genuine issue of material fact as to whether Officer Merkle and Officer Gross acted with deliberate indifference to the risks posed by Wilkins' jail cell conditions.

With respect to Officer Derengowski, Wilkins testified that Officer Derengowski ignored his complaints regarding his prison cell conditions. Indeed, the only piece of evidence that Wilkins offers to establish that there is a genuine issue of material fact that warrants a trial is his self-serving deposition testimony. The Court recognizes that "deposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving[,]" *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013), but that "a self-serving affidavit supported by facts in the record could defeat summary judgment." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004) (*citing Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). "The record, moreover, may include the self-serving affidavit itself, provided that the affidavit 'meets the usual requirements for evidence on summary judgment—

including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there was a genuine issue for trial.'" *Id*.

In the instant matter, Wilkins did not testify to details about what he said, where he was, and when he had these conversations with Officer Derengowski. This lack of specificity prevents Wilkins from properly establishing a genuine issue of material fact as to the reasonableness of Officer Derengowski's conduct. In fact, Wilkins' deposition testimony, as a whole, fails to show that a genuine issue of material fact exists as to whether or not *any* of the individual Defendants acted with deliberate indifference. *See Gibbs*, 49 F.3d at 1208 (it is "not enough to show that a prison official merely failed to act reasonably").

As a result of the above findings, this Court holds that Defendants have met their initial burden of showing that no genuine issue of material fact exists by providing individual affidavits, where they state that they never spoke to Wilkins and that they never received any type of written communication from Wilkins regarding the conditions of his cell. While these affidavits contradict Wilkins' deposition testimony, this Court finds that Wilkins has not met his burden of creating a genuine issue of material fact as to Defendants' deliberate indifference because Wilkins fails: (i) to provide sufficient details about his conversations with Defendants; and (ii) to demonstrate that Defendants engaged in behavior that would amount to the level of deliberate indifference required to establish an Eighth Amendment violation. Seeing

as this Court can only assess the evidence before it, we conclude that summary judgment is warranted.

## CONCLUSION

For the aforementioned reasons, the Court grants Defendants' motion for summary judgment. If Wilkins seeks to appeal this decision, he may file a notice of appeal with this Court within thirty (30) days of the entry of the judgment. Fed. R. App. P. 4(a)(4). If he seeks to proceed *in forma pauperis* ("IFP") on appeal, he must submit another IFP application and set forth the issues he intends to present on appeal. Fed. R. App. P. 24(a)(1)(C). If Wilkins appeals without filing an IFP, he must pay the $505 appellate filing fee. Civil case terminated.

/s/ Charles P. Kocoras
_____
Charles P. Kocoras
United States District Judge

Date: 9/18/2015